[Crim. No. 16440. In Bank. Dec. 14. 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDERSON VICKERS, Defendant and Appellant.

452

---

## Counsel

George T. Davis and Lin B. Densmore for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Gloria DeHart, Timothy A. Reardon, John T. Murphy, Robert R. Granucci, Derald E. Granberg and Karl I. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant appeals from an order revoking probation granted after the imposition of sentence upon his plea of guilty to a charge of possession of heroin.[1] (Health & Saf. Code, § 11500.) ██ He contends that the denial of an opportunity to rebut allegations contained in the reports of the probation officer, upon which the court relied in ordering revocation, rendered the order invalid and subject to attack on appeal therefrom.[2] We agree in principle but conclude for reasons hereinafter set forth that defendant is not entitled to relief in the instant circumstances.

A motion to revoke defendant's probation was filed by his probation officer and first appeared on calendar on November 18, 1970. Defendant was not present on that date and the matter was continued to December 14, at which time defendant and his attorney were both present. It appeared to the court from various probation reports that after one month on the work furlough program defendant reported ill and was admitted to an emergency hospital. He was treated and discharged that same day. After he did not respond to a call at his home the following day, his probation officer concluded that defendant had "absconded" and a bench warrant was issued.

---

[1] Although there are inconsistencies in the record, it fairly appears that judgment was pronounced and execution of sentence suspended on October 13, 1970. Defendant was placed on probation for three years conditioned among other things on serving one year in the county jail. The conduct alleged to constitute a violation of the terms of probation occurred within approximately one month after probation was granted and while defendant was enrolled in a work furlough program outside the jail. (Pen. Code, § 1208.)

[2] The order of revocation in these circumstances is appealable as an order made after judgment affecting a defendant's substantial rights. (Pen. Code, § 1237, subd. 2.) In the case of *In re Davis* (1951) 37 Cal.2d 872 [236 P.2d 579], the defendant was taken directly to prison upon revocation of probation granted after the imposition of sentence. He had neither a hearing nor notice prior to revocation and learned of the revocation only after his arrest and incarceration in prison. We held in such case that the validity of the revocation could be reviewed by writ of habeas corpus. (*Id.* at p. 875.) This is not to say, however, that a timely appeal from the order could not have been taken, and anything to the contrary in *People v. Youngs* (1972) 23 Cal. App.3d 180 (at p. 183, fn. 1) [99 Cal.Rptr. 901] is disapproved. (See also *People v. Delles* (1968) 69 Cal.2d 906, 908 [73 Cal.Rptr. 389, 447 P.2d 629]; *People v. Robinson* (1954) 43 Cal.2d 143, 145 [271 P.2d 872].)

The probation report also disclosed that at the time defendant was taken into custody upon his return to work following his alleged illness and recovery he possessed a large sum of money. He accounted for the possession of the money by explaining that he had collected rents from properties owned by his grandfather and that he held the money intending to pay taxes which had been assessed against those properties. According to the probation officer there was no response from occupants of the rental properties when the officer called.

At the December 14 hearing defendant's counsel criticized an adverse probation report prepared prior to the hearing at which probation was granted, stating that the report was the result of an incomplete investigation. Counsel also stated that defendant's grandfather, if given the opportunity, would testify in support of defendant's claim that he had collected and was holding rental money at the time of his arrest, and that other witnesses would testify as to defendant's illness during the time he was absent from the work furlough program. Counsel also stated that hospital personnel had told defendant to go home and rest and that he had been in bed for a week after which he voluntarily returned to work prior to his arrest. Other matters asserted by the court as appearing in the probation reports were also disputed by defendant's counsel.

Without hearing from any sworn witness the court concluded that it could not accept counsel's explanation that defendant had innocently left the hospital for his home in response to instructions from hospital personnel; stating that, under the circumstances, defendant was too familiar with criminal procedures to have acted in good faith and had "just walked off from probationary status." Probation was revoked over defendant's claims that he had made no misrepresentations to his probation officer.[3]

Complaints of a lack of notice and hearing prior to revocation of probation have, until recently, fallen on deaf ears. The established rule has

---

[3]The record again leaves some doubt as to the actual proceedings in the trial court. The form filed pursuant to Penal Code section 1202b committing defendant to the Department of Corrections indicates that probation was denied, judgment was pronounced and defendant was committed to the Department of Corrections on December 14. On the other hand, the reporter's transcript is in accord with our view of the record, that is, that judgment was pronounced, execution of sentence stayed and probation granted on October 13, and on December 14 after continuance of a motion to revoke probation from November 18 probation was revoked and defendant committed. Our difficulty with the record is further compounded by the fact that defendant's notice of appeal, filed on December 18, erroneously specified November 18 as the date upon which probation was revoked. This may have been due to the court's erroneous recital at the hearing on December 14 that probation had been "heretofore revoked." As stated, we deem revocation to have been ordered for the first time on December 14 and conclude that the notice of appeal was thus timely filed. (Cal. Rules of Court, rule 31(a).)

been that "there is neither a constitutional nor a statutory right to notice and hearing preceding revocation of probation. The federal Constitution does not give such a right. [Citation omitted.] And we do not believe that . . . our state Constitution should be held to give petitioner a greater right in this respect than he is accorded under the federal Constitution. for under our law, as under the federal law, probation is not a right, but a privilege [citations omitted]." (*In re Davis, supra,* 37 Cal.2d 872, 873-874.)[4] That rule, however, is no longer in accord with federal constitutional due process requirements (see *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]) and, for reasons similar to those enunciated by Chief Justice Burger in *Morrissey,* we conclude that it is no longer consistent with our state constitutional requirements of due process (Cal. Const., art. I, § 13).

In *Morrissey* two Iowa parolees each suffered the revocation of his parole without a hearing upon review of the written report of his parole officer. The Supreme Court considered the traditional views, similar to those expressed in *Davis,* and noted in departing therefrom that a grant of parole is no longer a mere act of clemency but is now "an integral part of the penological system"; that its purpose is to "help individuals reintegrate into society as constructive individuals as soon as they are able"; that it "serves to alleviate the costs to society of keeping an individual in prison." (*Id.* at p. 477 [33 L.Ed.2d at p. 492].) The court also noted that as due process considerations are no longer deemed to turn upon whether a governmental benefit is to be characterized as a "right" or a "privilege" (see

---

[4]Penal Code section 1203.2 provides in pertinent part:

"(a) At any time during the probationary period of a person released on probation under the care of a probation officer pursuant to this chapter, any probation or peace officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the person and bring him before the court or the court may. in its discretion, issue a warrant for his rearrest. Upon such rearrest, the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his probation. has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he has been prosecuted for such offenses.

"(b) Upon its own motion or upon the petition of the probationer or the district attorney of the county in which the probationer is supervised, the court may modify. revoke, or terminate the probation of the probationer pursuant to this subdivision. The court shall give notice of its motion, and the district attorney shall give notice of his petition to the probationer and the probation officer; and the probationer shall give notice of his petition to the probation officer. The court shall refer its motion or the petition to the probation officer. After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer upon the grounds set forth in subdivision (a) if the interests of justice so require."

Unless otherwise specified all statutory references are to sections of the Penal Code.

*Graham* v. *Richardson* (1971) 403 U.S. 365, 374 [29 L.Ed.2d 534, 543, 91 S.Ct. 1848]), the questions to be resolved were whether the nature of the interest being protected in revocation proceedings is such that some procedural processes should be accorded the parolee consistent with the Fourteenth Amendment and, if so, what minimal procedural safeguards in these circumstances are necessary.

The high court had little difficulty in concluding that the nature of the interest of a parolee in his liberty, even though significantly circumscribed, is one worthy of protection. It stated that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss,' on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." (*Id.* at p. 482 [33 L.Ed.2d at p. 495].)

The court chose not to prescribe the precise processes which are due a parolee before he may be deprived of his restricted liberty, but it set forth minimal requirements under the Fourteenth Amendment.[5] In its view parole revocation conforming to due process is a two-step procedure—an initial determination that there exists or do not exist grounds which may support revocation thus justifying a temporary detention pending formal revocation proceedings, and the more formal proceedings requiring factual determinations and disposition based thereon.

The court likened the initial proceedings to a preliminary hearing for the determination of "probable cause or reasonable ground" to believe that a parole violation has occurred, and stated that "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." (*Id.* at p. 485 [33 L.Ed.2d at p. 496].) The determination need not be made by a judicial officer, but could be made by some qualified person such as a parole officer who was not directly involved in the case. The initial hearing need not be formal, but the parolee must be given notice of the time, place and purpose thereof, and of the alleged parole violations. At the hearing the parolee is entitled to appear and speak personally in

---

[5]"We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the *minimum requirements of due process*." (*Morrissey* v. *Brewer, supra,* 408 U.S. at pp. 488, 489 [33 L.Ed.2d at pp. 498, 499]; italics added.)

his own behalf, and bring and present letters, documents and other persons who can give relevant information to the hearing officer. Adverse witnesses are to be made available for questioning by the parolee except when the hearing officer determines that an informant would be subject to risk of harm if his identity were disclosed. The hearing officer must make a summary or digest of the proceedings and must determine if there exists probable cause to hold the parolee for revocation proceedings against him. The court stated that as in *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 271 [25 L.Ed.2d 287, 301, 90 S.Ct. 1011], "the decision maker should state the reasons for his determination and indicate the evidence he relied on" although "formal findings of fact and conclusions of law" are not required. A holding of the existence of probable cause, however, would warrant detaining the parolee and returning him to his place of detention pending further proceedings.

The revocation hearing itself may be waived by the parolee but, if not, must lead to a final resolution of contested facts and a conclusion whether such facts as determined warrant revocation of parole.[6] The hearing must be had within a "reasonable time" after the parolee is taken into custody, and in *Morrissey* a lapse of two months was not deemed to be unreasonable.

The minimum requirements of due process at the revocation hearing were stated in *Morrissey* to be: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement of the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough

---

[6]The high court stated that the hearing must be made available "if it is desired by the parolee." (408 U.S. at p. 487 [33 L.Ed.2d at p. 498].) There is nothing in the opinion which forecloses a summary resolution of the issue of revocation if an undisputed course of conduct constitutes, as a matter of law, a violation of one or more conditions of parole. Whether a course of conduct and the attending circumstances are factually undisputed thus leaving open only questions of law is a matter as to which the hearing officer may make inquiry. If it appears, for instance, that upon a request by the hearing officer for a preliminary statement in the nature of an offer of proof by the parties the only matter in issue is the legal consequences of an undisputed course of conduct, the hearing officer may, without hearing any witness, rule on the matter. Such summary proceedings could not be used to shift the burden or degree of proof of factual matters if they remain in issue.

to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."[7] (*Id.* at p. 489 [33 L.Ed.2d at p. 499].)

We are, of course, bound by the Supreme Court's determinations in *Morrissey* to the extent that they establish minimal due process requirements in parole revocation proceedings. Although we are not confronted with a revocation of parole but rather with proceedings for the revocation of probation granted after conviction and imposition of sentence, we cannot distinguish such proceedings in principle insofar as the demands of due process are concerned. The recognition that aside from an act of clemency a grant of parole is an integral part of the penological system intended to help those convicted of crime to integrate into society as constructive individuals as soon as possible and alleviate the cost of maintaining them in custodial facilities, is equally applicable in the case of a grant of probation. The characterization of a grant of probation as a privilege rather than a right is also, as in the case of a grant of parole, no longer of significance. Certainly the nature of a probationer's interest in his liberty, not necessarily ever having been an inmate of a prison or a jail, is at least as great as that of a parolee and is entitled to at least the same due process safeguards before it is terminated. *Morrissey* is thus equally applicable in the case of a revocation of probation insofar as it assures that revocation can be had only with due process protections. However, the precise nature of the proceedings for such revocation need not be identical if they assure equivalent due process safeguards.

The most obvious procedural distinction between probation revocation proceedings in this state and those discussed in *Morrissey* is that the former is not an administrative but is a judicial act as provided in section 1203.2. That section provides for some but not all of the minimum due process requirements necessary to conform such proceedings to Fourteenth Amendment proscriptions. Thus it provides in subdivision (a) for the rearrest of a probationer and revocation of probation but makes no provision for a preliminary determination of probable cause to believe that a violation of probation has occurred in order to warrant the detention of a probationer until a more formal hearing is had. Nor does it appear in connection with or at the formal hearing pursuant to proceedings under subdivision (a) that the probationer is assured of written notice of the claimed violations

---

[7]The court also noted that the "full panoply of rights due [an individual] in [a criminal proceeding] does not apply to parole revocations. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." (*Id.* at p. 480 [33 L.Ed.2d at p. 494].)

or, pursuant to proceedings under either subdivision (a) or (b), disclosure of the evidence against him, an opportunity to be heard in person and to present witnesses and documentary evidence, or the right to confront and examine adverse witnesses (except where the court finds good cause for not allowing confrontation). The statutory provision thus fails to meet several of the mandatory requirements of due process as set out in *Morrissey* and as now held by us to be applicable in probation revocation proceedings.

It also appears that defendant's probation was revoked in the instant case without according to him at least several of the safeguards mandated by *Morrissey*. The record shows he did not have a preliminary determination on the issue of probable cause[8] and, at the hearing on revocation, he was denied an opportunity to be heard in person and to present witnesses and documentary evidence and the right to confront and cross-examine witnesses. Perhaps other rights now required by *Morrissey* were not afforded defendant. Before proceeding to a determination as to what relief, if any, defendant is entitled, there are other considerations which require discussion.

The courts of this state recognized prior to *Morrissey* that due process requires in probation revocation proceedings at least several of those rights now compelled by *Morrissey*. In *People* v. *Youngs* (1972) 23 Cal.App.3d 180 [99 Cal.Rptr. 901], imposition of sentence was suspended and defendant was placed on probation. Three years later probation was summarily revoked on allegations by defendant's probation officer of a failure to comply with certain terms of probation. When defendant was arraigned for sentencing his attorney raised the issue of an actual violation of the terms of probation, but after an informal discussion during which no witnesses were heard on defendant's behalf, probation was revoked.

The court recognized that under the then prevailing law a probationer had no right to a hearing preceding a revocation of probation in accordance with section 1203.2 (see fn. 4, *supra*), but held that following such a revocation he was entitled to a hearing between the act of summary revocation and the act of imposing sentence in order to challenge an erroneous or false allegation of a violation. The court concluded: "It appears to us that fundamental principles of due process and fair play demand, and we hold, that after a summary revocation of probation and before sentencing a hearing is required at which the defendant is entitled to be represented by counsel, to be advsied of the alleged violation and given

---

[8]It is possible, although we cannot so conclude on the record before us, that defendant was given the equivalent of a preliminary hearing on November 18, 1970, shortly after he was arrested. However, he did not attend that hearing.

We do not read *Morrissey* as precluding the holding of the two proceedings in close or immediate sequence to each other providing that the due process protections declared in that decision are not infringed.

an opportunity to deny or explain it, and, if necessary, present witnesses on his own behalf."[9] (*Id.* at p. 188.)

The broader rights afforded under *Morrissey* are not to be diminished by anything said in *Youngs*. *Youngs*, however, raises a further problem which was not presented in *Morrissey*, and which must be resolved. On the surface *Morrissey* appears to preclude a revocation until after a hearing, yet in *Youngs* a summary revocation of probation was deemed justified if there followed a hearing in conformance with due process. The answer, we believe, lies in the fact that *Morrissey* directed its attention only to the situation where there had been an actual deprivation of individual liberty, although circumscribed. In that case the parolees were arrested and immediately committed to confinement and eventually to prison without due process of law. A different situation is presented, however, when a parolee's right to liberty is the subject of proceedings had *before* his arrest or actual deprivation of his conditional liberty. Such a situation commonly develops when a parolee unilaterally elects to escape the restraints imposed on his liberty and severs the lines of communication with those assigned to supervise him; in effect, he absconds. Should he remain at liberty without proceedings had against him he could conceivably complete his term and the Authority would lose jurisdiction in the matter. (See *People* v. *Youngs*, *supra*, 23 Cal.App.3d 180, 184-185.) Due process does not require that a defendant profit by such wrongdoing and we read *Morrissey* as applicable only in those instances where an actual seizure of the individual has occurred. It is this loss of liberty which compels the procedures set forth in *Morrissey*. Accordingly, a summary termination of his status while a parolee remains at liberty and unavailable to the authorities does not fall within the proscription of *Morrissey*.[10] Once taken into custody, however, due process requires that he be accorded both preliminary and formal hearings which conform to *Morrissey* standards. The purpose of the hearings would not be to revoke parole as such revocations would have already been summarily ordered, but rather to afford the defendant an opportunity to require the Authority to establish that the alleged violations did in fact occur and justified the revocation.

[9]The court in *Youngs* dealt with a situation where sentence had not yet been imposed. As to a hearing on revocation where sentence had been imposed but execution thereof stayed prior to probation, the court stated: "Whether that procedure [revocation of probation ex parte and defendant taken directly to prison] comports with current concepts of due process, we leave to another court on another day. Frankly, we can find no meaningful distinction between the two procedures." (23 Cal.App.3d at p. 188.)

[10]We do not foreclose the possibility that summary revocations other than when the defendant has absconded, particularly if necessary to preserve the court's jurisdiction, will comport with due process requirements.

■ For the same reasons we have held that *Morrissey* is applicable in probation as well as parole revocation proceedings, we conclude that a summary termination of probationary status in the case of an absconding probationer comports with due process requirements if he is accorded a hearing or hearings which conform to *Morrissey* standards after being taken into custody.

We now deal with the question of a defendant's right to counsel at revocation of probation proceedings. *Morrissey* does not compel that the defendant be represented on revocation of parole, the majority stating that they did not reach that question. (See, however, concurring opn. by Brennan, J., and opn. by Douglas, J., dissenting in part, 408 U.S. at pp. 491, 500 [33 L.Ed.2d at pp. 500, 505].) *Youngs* holds that a defendant is entitled to be represented by counsel at the hearing following a summary revocation of probation. Although we do not reach the issue whether representation by counsel is constitutionally compelled at probation revocation proceedings of the type involved in the instant case, we are of the view, for the reasons which follow, that the efficient administration of justice requires that the defendant be assisted by retained or appointed counsel at all revocation proceedings other than at summary proceedings had while the probationer remains at liberty after absconding.

The violation of a condition of probation is often a matter of degree or quality of conduct, and the point when a violation occurs often is a matter of technical judgment. (See *Arciniega* v. *Freeman* (1971) 404 U.S. 4 [30 L.Ed.2d 126, 92 S.Ct. 22].) A violation may be of such little consequence that a probationer may not even be aware of his transgression. An explanation of his intents and motives might well establish that he was not volitionally guilty of any misconduct. However, he too often lacks the training and poise to present to either his probation officer or the court his explanation in a persuasive manner, although or perhaps because the stakes are high. Trained counsel, in such circumstances, "can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of" his client. (*Goldberg* v. *Kelly, supra,* 397 U.S. 254, 270-271 [25 L.Ed.2d 287, 300].) With counsel's assistance the proceedings will move to an orderly, just conclusion (see *People* v. *Sharp* (1972) 7 Cal.3d 448, 460-461 [103 Cal. Rptr. 233, 499 P.2d 489]) in the best interests of both the probationer and the People. ■ We conclude accordingly that as a judicially declared rule of criminal procedure (see *People* v. *Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513]) a probationer is entitled to the representation of retained or appointed counsel at formal proceedings for the

revocation of probation, or following such summary revocation in appropriate cases.[11]

Defendant in the instant case is not entitled to the benefits provided by *Morrissey* for the reason that *Morrissey* itself states that such procedures "are applicable to future revocations of parole, . . ." (*Morrissey* v. *Brewer, supra,* 408 U.S. 471, 490 [33 L.Ed.2d 484, 499].)[12] No reason appears why a different date should be established in a case of probation revocation. *Morrissey* was filed on June 29, 1972, a year and a half after the revocation complained of in the instant case. Nor is defendant entitled to relief on the ground that the revocation proceedings also failed to comply with due process procedures as compelled by *Youngs.* The opinion in *Youngs* was filed on January 28, 1972, more than a year after the revocation of probation in the instant case. We need not, however, resolve here the question of *Youngs'* retroactivity as *Youngs* deals only with probationers whose sentence was not imposed prior to probation. As we have noted (see fn. 8, *supra*) *Youngs* expressly states that as to whether due process requires a hearing on revocation of probation granted after judgment was pronounced and execution of sentence suspended, it would leave to another court on another day. Any retroactive application of *Youngs* would thus not aid defendant.[13] (Cf. *People* v. *Nelson, post,* p. 463 [105 Cal.Rptr. 314, 503 P.2d 1322].)

The order revoking probation is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied January 24, 1973 and the opinion was modified to read as printed above.

---

[11]We note that in the instant case defendant was represented and, it appears, it has been the practice in at least some of our counties to provide counsel in these circumstances. (See *People* v. *Youngs, supra,* 23 Cal.App.3d 180, 186-187.)

[12]Counsel for defendant in *People* v. *Nelson, post,* page 463 [105 Cal.Rptr. 314, 503 P.2d 1322], argues that despite *Morrissey's* express direction otherwise it is to be given retroactive application. We reject the argument for the reasons set forth in that opinion.

[13]This decision is to be effective after June 29, 1972 (also the effective date of *Morrissey*), and is applicable only to orders which revoke probation or modify it in a manner which places greater restrictions on the probationer's liberty.