[Crim. No. 2837. Fifth Dist. Mar. 30, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
JESSE A. QUINTANA, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Appellant.

Jack K. Weber, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

BROWN (G. A.), P. J.—After his 1972 conviction of second degree burglary, appellant was found eligible for and was committed to the California Rehabilitation Center (hereinafter C.R.C.) for treatment. (See Welf. & Inst. Code, § 3051.)[1] Criminal proceedings were suspended.

[1]All code sections hereinafter referred to will be in the Welfare and Institutions Code unless otherwise indicated.

On February 4, 1974, respondent was released to outpatient status. On October 23, 1974, the Narcotic Addict Evaluation Authority (hereinafter the Authority) suspended his outpatient status. As of November 14, 1975, respondent had absconded from supervision and the Authority was unaware of his whereabouts for over a year. On the latter date, pursuant to section 3053[2] the Authority excluded respondent from the program because "[t]his person has been at-large and beyond our control for a period exceeding one year and hence it is beyond the capacity of the program to effectuate the expectations of the commitment." On December 2, 1975, the superior court set aside the C.R.C. commitment and resumed criminal proceedings. After the appellant was arrested upon a bench warrant he requested an exclusion hearing pursuant to section 3053. The hearing, stated by the court to be "to terminate CRC commitment and reinstate criminal proceedings," was set on May 20, 1976. After the hearing the court ordered that "the defendant herein, JESSE A. QUINTANA, be returned to the California Rehabilitation Center at Norco, California, for Morrissey hearing as per In re: BYE, 12 CAL 3d, 96."

The People have appealed from that order, urging that no *Morrissey* (*Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593])-type administrative hearing was required before respondent was excluded from the C.R.C. program.

Initially it must be observed that the decision of the Authority excluding respondent from the C.R.C. program had the implicit effect of revoking respondent's outpatient status as well. It would seem therefore that the issue of whether a *Morrissey*-type hearing is required for revocation of outpatient status is a separate and distinct issue from the issue of such a hearing as it relates to the exclusion itself. ■ We will hold that while a *Morrissey*-type hearing is required on the issue of revoking respondent's outpatient status under the explicit holding of *In re Bye* (1974) 12 Cal.3d 96 [115 Cal.Rptr. 382, 524 P.2d 854] (cert. den., 420 U.S. 996 [43 L.Ed.2d 679, 95 S.Ct. 1437]), such a hearing is not required before the Authority can exclude appellant from the program.[3]

---

[2]Welfare and Institutions Code section 3053 provides: "If at any time following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted."

[3]Though the court's order only referred to *In re Bye*, it is clear from the transcript of the hearing that the court intended the order to apply to the exclusion order itself.

This very issue was discussed and decided in *People* v. *Hillock* (1974) 39 Cal.App.3d 36 [113 Cal.Rptr. 823]. In that case defendant was a C.R.C. outpatient who was convicted of a new crime; he was excluded by the Authority without a *Morrissey*-type hearing. The court, in holding that no *Morrissey* hearing was required, stated:

"Appellant urges this court to apply to the exclusion procedure the standards which were established for parole revocation in *Morrissey* v. *Brewer*, 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], and extended to probation revocation proceedings in *People* v. *Vickers*, 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313].

"Here the question presented is not one of the individual's being committed to the institution, but of his being excluded from it. The determination of the superintendent in itself did not deprive appellant of liberty; it served only to return him to court where a hearing was conducted and sentence ultimately was imposed. The action of the superintendent is not to be compared with that of a board in revoking parole, or of a court in revoking probation; it is more nearly analogous to that of a probation officer in *recommending* that probation be revoked, which action is followed (as was the recommendation here) by a hearing before the court, wherein the defendant has the opportunity to appear, to confront and cross-examine the witnesses against him, and to testify in his own behalf.[4] The administrative action in itself thus is not subject to *Morrissey* standards. [Citation.]" (39 Cal.App.3d at pp. 38-39.) (See *People* v. *Gifford* (1974) 38 Cal.App.3d 89, 91 [113 Cal.Rptr. 112]; *People* v. *Pruett* (1973) 31 Cal.App.3d 1 [105 Cal.Rptr. 204].) We agree with the rationale expressed in *People* v. *Hillock, supra.*

*Hillock* was filed on May 7, 1974, approximately two months before *In re Bye* was decided by the Supreme Court on July 23, 1974. However, *Bye* does not undermine the reasoning of *Hillock;* it in fact is entirely consistent with *Hillock*. In *Bye* the fundamental due process right of the defendant was found in not having his conditional liberty revoked and being returned to a walled security facility without a *Morrissey*-type hearing. On the contrary, in excluding a defendant from the C.R.C. there

---

[4]By case law the court on return of the defendant to it under section 3053 has authority to review the exclusion to determine if the director abused his discretion. (*People* v. *Wisdom* (1975) 47 Cal.App.3d 482 [120 Cal.Rptr. 745].) The Authority recognizes this in its letter of exclusion which states in part: "We are returning the matter of *Jesse A. Quintana* to the Court 'for consideration of vacation of the Civil Commitment and reinstitution of criminal proceedings heretofore suspended."

is no conditional liberty involved but merely a transfer from one security facility to another. Any due process rights to which a defendant is entitled are fully protected and accorded to him by the exclusion hearing before the superior court pursuant to section 3053. (See *People* v. *Wisdom, supra,* 47 Cal.App.3d 482; *People* v. *Hillock, supra,* 39 Cal.App.3d 36; *People* v. *Hakeem* (1969) 268 Cal.App.2d 877, 881-882 [74 Cal.Rptr. 511] (cert. den., 396 U.S. 913 [24 L.Ed.2d 189, 90 S.Ct. 231]).)

The order is reversed insofar as it purports to require the Authority to hold a *Morrissey*-type hearing before excluding respondent from the C.R.C. program; and insofar as the order may be construed as requiring the Authority to hold a *Morrissey*-type hearing before his outpatient status is revoked, the order is affirmed.

Franson, J., and Hopper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 9, 1977. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.