[No. B002132. Second Dist., Div. Two. Apr. 3, 1984.]

In re THOMAS ELAM on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Randall MeGee and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

John K. Van de Kamp, Attorney General, John R. Gorey and Lisa A. Lench, Deputy Attorneys General, for Respondent.

**OPINION**

GATES, J.—On July 6, 1981, petitioner pled guilty to possessing a sawed-off shotgun. He was immediately placed on probation without the imposition of sentence. However, in accordance with a previously effected agreement,

the court also purported to order that he spend the first six months of his probationary term in custody but with execution thereof "stayed" pending the receipt of future reports concerning his "progress."

The objective of this "probation" within "probation" is obscure since a court is always free to require periodic reports if it so desires. ▇ Furthermore, if a probationer fails to demonstrate proper rehabilitative efforts, the court may require him to spend appropriate periods in custody at any time during his original probationary term, or any extension thereof. In no event, however, may probation, once granted, be made more onerous without affording the probationer an opportunity to be heard. (*People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]; *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].)

It is true, of course, that temporary "stays of execution" to a date certain, i.e., stays that are essentially self-executing and not conditional upon a probationer's good conduct, are permissible and require no further hearing. Although not certain, it appears that the People, the probation department and the trial court may all have believed that this type of true "stay" could be enlarged to encompass indefinitely "suspended punishments" of the present variety. If so, they were in error.

Perhaps the principal reason an initial period of confinement is included in a probationary plan is the hope it will capture the recently convicted defendant's attention by affording him (1) a time to reflect upon his actions and their consequences before assuming his other probationary responsibilities, and (2) a mild foretaste of his future living conditions should he fail to mend his ways. However, when this hopefully "rehabilitative punishment" is indefinitely postponed, it loses its meaning and purpose, simply blending into the potential sentence itself, a punishment that also remains undetermined.

▇ In the present instance, petitioner's probationary jail term was "restayed" from time to time for over two years. Then, upon receipt of a relatively unfavorable "progress report," although not one which recommended either the termination of probation or the "execution" of the "stayed" term, the court, without according petitioner a hearing on the issue, announced, "I don't think he has good conduct." It thereupon declared, "The stay is no longer stayed" and ordered that "probation will terminate upon completion of that service of time." Under the terms of Penal Code sections 17, subdivision (b)(3), and 1203.4 such a conclusion could actually prove more onerous than a clear cut "revocation" of petitioner's probation followed by the imposition of a six-month misdemeanor sentence.

The court's order of October 21, 1983, is vacated and the cause remanded to the Los Angeles Superior Court in order that it may conduct a formal probation violation hearing if it deems it appropriate so to do.

Compton, Acting P. J., and Beach, J., concurred.