Filed 6/5/15  P. v. Chavez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Appellant,

v.

AVE CHAVEZ,

    Defendant and Respondent.

E061357

(Super.Ct.No. CJR1400419)

OPINION

APPEAL from the Superior Court of San Bernardino County.  James Robert Gericke, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Order reversed.

Michael A. Ramos, District Attorney, Eric M. Ferguson, Deputy District Attorney, for Plaintiff and Appellant.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Respondent.

During a hearing on a petition to revoke the community supervision on which defendant, Ave Chavez, had been placed, a hearing officer (Pen. Code, § 3455, subd.

1

(a))[1] in the trial court concluded that defendant's supervision was subject to early termination under the provisions of section 3456 and terminated that supervision and discharged defendant from it. The People appeal, contending this was error. We agree and reverse the order.

## FACTS, ISSUES AND DISCUSSION

Defendant pled nolo contendere to transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and possessing methamphetamine for sale (Health & Saf. Code, § 11378) and he admitted having suffered six prior convictions for which he served prison terms. An agreed-to sentence of 10 years was imposed, but suspended, and he was granted felony probation. About a year later, following a revocation of his probation, he was sentenced to prison for four years.[2] He was released from prison on April 8, 2013 and placed on Community Supervision, which was set to terminate on April 8, 2016. On April 4, 2014, his probation officer filed a petition to revoke his community supervision and remand him, recommending that defendant serve 180 days and be reinstated on community supervision. In the petition, the probation officer stated that defendant had violated two of the terms of his community supervision by, in June, 2013, using another person's credit card to pay $761.24 of his own bills and by not cooperating with his

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] This is what the petition states. However, the original abstract of judgment states that a 10-year term was imposed, even though it accounts for only 9 of those 10 years, and the amended abstract shows a total term of 9 years being imposed.

2

probation officer in a plan of rehabilitation and following all the latter's reasonable directives. The petition also stated that defendant had served two prior flash incarcerations—one, for five days, beginning on October 16, 2013, and another, for ten days, beginning on December 31, 2013, from which defendant was released on January 9, 2014.

At the April 17, 2014 hearing on the petition, the probation officer stated that defendant had signed waivers for both flash incarcerations, and the officer had a copy of the one that was signed as to the first flash incarceration. That copy is not part of the record before this court. Defendant asserted that more than a year had elapsed since he had been released on community supervision and, according to the terms of section 3456, he was entitled to early termination of that supervision. The People argued that defendant's flash incarceration that ended on January 9, 2014 rendered defendant ineligible for early termination. Section 3456 provides, in pertinent part, "(a) The county agency responsible for [community] supervision . . . shall maintain [said] supervision over a person under [said] supervision . . . until one of the following events occurs: [¶] (1) The person has been subject to . . . supervision . . . for three years at which time the offender shall be immediately discharged from . . . supervision. [¶] Any person on . . . supervision for six consecutive months with no violations of his or her conditions of . . . supervision that result in a custodial sanction may be considered for immediate discharge by the supervising county. [¶] (3) *The person who has been on . . . supervision continuously for one year with no violation of his or her conditions of . . . supervision*

3

*that result in a custodial sanction shall be discharged from supervision within 30 days.* [¶] (4) Jurisdiction over the person has been terminated by operation of law." (§ 3456, subd. (a), italics added.)

The hearing officer ruled that a flash incarceration was not a custodial sanction within the meaning of section 3456 because "in the course of it" defendant had not been properly advised of his right to contest the allegation that he had violated the terms of his community supervision and because defendants are usually in custody when they execute waivers concerning their violation of the terms, they act without advice of counsel. The hearing officer further concluded that in order for a flash incarceration to be considered a custodial sanction, a hearing officer or other magistrate must make a determination that a violation of the condition of community supervision has occurred. The hearing officer ruled that more than a year had elapsed since defendant was released on community supervision, during which defendant had not suffered a custodial sanction, therefore defendant's community supervision had terminated and defendant was discharged from it.

However, we conclude that a flash incarceration is a custodial sanction within the meaning of section 3456. Section 3454, subdivision (b) categorizes a flash incarceration as an "immediate, structured, and intermediate sanction" that is "encouraged as one method of punishment for violations of an offender's condition of . . . supervision." Subdivision (c) goes on to explain, concerning flash incarcerations, "[s]horter, but if necessary more frequent, periods of detention for violations of an

4

offender's . . . supervision conditions shall appropriately punish an offender while preventing the disruption in a work or home establishment that typically arises from longer term revocations." Section 3450, subdivision (b)(8) describes such intermediate sanctions as "[c]ommunity-based punishment" and "correctional sanctions." Section 3455 provides that if the intermediate sanctions provided in section 3454, subdivision (b), which include flash incarcerations, are not appropriate, the supervising agency may petition the court to revoke, modify or terminate community supervision. Upon a finding that the defendant violated the condition(s) of supervision, the revocation hearing officer may, inter alia, return him or her to community supervision with modifications of the conditions, including a period of incarceration in county jail, or revoke and terminate community supervision and order him or her to be confined in the county jail. Subdivision (d) of section 3455 refers to these jail confinements as "custodial sanction[s]." Post-modification and post-revocation jail confinement serve the same purpose as flash incarcerations, therefore, there is no reason to consider the latter anything other than a custodial sanction. Certainly, there can be no doubt that a flash incarceration, like a post-modification or post-revocation incarceration, is a punishment and a sanction for a violation of the conditions of community supervision.

Defendant contends that community supervision can be likened to probation, therefore, like probation, the decision to terminate it falls within the discretion of the hearing officer, which is subject to the abuse of discretion standard. However, the provision upon which the hearing officer relied, i.e., section 3456, invests the hearing

5

officer with no discretion whatsoever. It merely provides that if a defendant has survived a year after community supervision began without suffering a custodial sanction, that defendant is entitled to have his or her community supervision terminated early, i.e, before the customary three-year term. Ignoring the confines of the hearing officer's ruling,[3] defendant cites no authority and provides no persuasive argument for us to ignore the clear dictates of section 3456, and simply view an early termination of community supervision as akin to the modification and/or termination of probation, the latter of which is subject to the trial court's discretionary powers.

Defendant points to section 1203.2, which he asserts "'incorporate[s] the procedural due process protections held to apply to probation revocation procedures under *Morrissey v. Brewer* (1972) 408 U.S. 471 [(*Morrissey*)],[4] and *People v. Vickers* (1972) 8 Cal.3d 451 [(*Vickers*)], and their progeny' . . . (see 2012 Cal. Legis.Serv. Ch. 43 (S.B. 1023) § 2, subd. (b).)" to the decision to revoke, terminate or modify community supervision. However, section 1203.2 provides, in pertinent part, "At any time during the period of supervision of a person . . . subject to revocation of . . . community supervision pursuant to Section 3455 . . . if any probation officer . . . has probable cause to believe

---

**3** We presume that defendant is, sub silentio, invoking the rule of "right ruling, wrong reason." (See *People v. Campbell* (1994) 23 Cal.App.4th 1488, 1494.)

**4** Contrary to defendant's assertion that "*Morrissey* . . . discuss[ed] the due process rights afforded to probationers." *Morrissey* dealt with parole revocation, not probation. *Vickers* made the due process rights outlined in *Morrissey* applicable to probationers facing revocation. (*Vickers*, *supra*, 8 Cal.3d at pp. 458-459.)

that the supervised person is violating any term or condition of his or her supervision, the officer may, without warrant . . . rearrest the supervised person and bring him or her before the court or the court may in its discretion issue a warrant for his or her rearrest. . . . [T]he court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person had violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses . . . . [¶] . . . Upon its own motion or upon the petition of the supervised person, the probation . . . officer, or the district attorney, the court may modify, revoke or terminate supervision of the person pursuant to this subdivision . . . . A person supervised on . . . community supervision pursuant to Section 3455 may not petition the court pursuant to this section for early release from supervision . . . ." While defendant is correct that the provisions of section 1203.2 governed the proceedings triggered by his probation officer's petition, they did not convert his "defense" against the petition's recommendation that his community supervision be reinstated with an additional term of 180 days of incarceration, i.e, his invocation of the early termination provision of section 3456, into a probation-like discretionary call by the hearing officer, subject only to reversal on the grounds that the call was arbitrary and irrational. Even if it did, we would conclude that the hearing officer's ruling was arbitrary and irrational because it was legally incorrect. (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 742.)

Defendant's reliance on section 1203.3 is also misplaced. Section 1203.2 provides for the modification, revocation or termination of the supervision of a defendant under community supervision, as well as, inter alia, a probationer and one under supervision pursuant to section 1170, subdivision (h). Section 1203.3 provides the trial court with the authority "when the ends of justice will be subserved thereby, and when the good conduct and reform of the person . . . held on probation shall warrant it, terminate the period of probation and discharge the person so held." (§ 1203.3, subd. (a).) Section 1203.3 also authorizes the trial court to revoke, modify or change the conditions of the court's order suspending the execution of the concluding portion of the person's term for those supervised under section 1170, subdivision (h). Conspicuously absent from section 1203.3 is any mention of defendants under community supervision, although the preceding section, i.e., section 1203.2, expressly provides for them, as discussed above. Therefore, we cannot agree that section 1203.3 should be read to empower a trial court to terminate community supervision under the presumptive validity of the exercise of its discretion.

Nor are we persuaded that the language of section 3456, subdivision (a)(2) means that the "trial court," as defendant puts it, had discretion in this case in discharging him from community supervision. Section 3456 directs the county agency responsible for community supervision to supervise anyone under community supervision until any one of six different events occurs. Defendant correctly points out that one such event is comprised of being on community supervision for "six consecutive months with no

violations of . . . [the] conditions of . . . supervision that result in a custodial sanction" and such person "*may be considered* for immediate discharge by the supervising county." (§ 3456, subd. (a)(2), italics added.)  There are two problems with defendant's reliance on this provision.  First, it is not the subdivision relied upon by the hearing officer below, which provides that a person on community supervision "*shall be discharged* from supervision within 30 days" if that person has been on community supervision continuously for one year with no violations of the conditions that result in custodial supervision.  Thus, there is no discretion provided by the subsection upon which the hearing officer here relied.  Second, section 3456 applies to "the county agency responsible for . . . supervision" and not to a hearing officer at the trial court.  The court is given the power to terminate, modify or revoke supervision (§ 3455, subd. (a)(2)) in the context of its determination upon a revocation petition.  (§ 3456, subd. (a)(6).) Section 3455 deals with violations that the supervising officer, in this case, the probation officer, elects to present to the court for more severe custodial punishment than is available without judicial intervention.  Otherwise, under section 3456, it is the county supervising agency which determines whether the conditions for early termination have been met.  Even if section 3456 can be read to vest the hearing officer at the trial court with any amount of discretion in terminating community supervision, we conclude, as we have before, that construing a flash incarceration upon violation of a term of supervision to not be a "custodial sanction" within the meaning of the statutes governing such supervision to be an error of law, and, therefore, an abuse of discretion.

9

Finally, defendant asserts that because he was not afforded his constitutional rights during either of his flash incarcerations, they may not be used to deprive him of early termination of his community supervision under section 3456. Defendant asserts that the rights set forth in *Morrissey* and *Vickers*, i.e., to written notice of the violation, disclosure to the defendant of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body and a written statement by the fact finder of evidence relied upon and the reasons for revocation, and, in *Vickers*, the right to counsel except in the case of summary probation where the defendant is not in custody (*Morrissey*, *supra*, 408 U.S. at p. 489; *Vickers*, *supra*, 8 Cal.3d at pp. 458-460) were not accorded to him before his flash incarcerations occurred. For proof of this fact, he cites the provisions of section 3453, subdivision (q), which state that a person subject to community supervision "shall waive any right to a court hearing prior to the imposition of a period of 'flash incarceration' . . . of not more than 10 consecutive days for any violation of his or her . . . supervision conditions." Of course, a parolee may waive his or her right to a hearing, admit the charges and agree to a return to custody. (Cal. Code Regs., tit. 15, former § 2645.) Defendant asserts that "[n]othing in the statute suggests that [he] had the right to choose not to sign this waiver. Hence, any waiver of his constitutional rights was involuntary, and, as such, invalid."[5] First, defendant cites no

_____

[5] As already stated, the record before us contains no copy of either waiver purportedly executed by defendant.

10

authority holding that the rights that apply to revocations of probation and parole should apply to flash incarcerations. Flash incarcerations are designed to be a swifter, but milder and less disabling sanction than a return to court with its potential term of many months. It is also clearly designed to relieve the courts of the burden of having to adjudicate and punish minor violations. If, contrary to our holding, flash incarcerations are not viewed as custodial sanctions, supervising officers will be forced to use the formal court process in order to prevent the period of supervision from automatically and, undesirably, expiring. This would result inevitably in longer periods of incarceration, especially given the time necessary to schedule and complete court hearings. Second, as defendant, himself, acknowledges, "[t]he record is devoid of any evidence to suggest that [he] was properly advised of his constitutional rights prior to signing the waiver. . . . [T]here is no evidence to show how, when, or where this waiver was signed." Equally, the record does not show that defendant was *not* advised of any rights he might have had.

### DISPOSITION

The order terminating defendant's community supervision and discharging him from it is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

11