Filed 6/24/15  P. v. Sims CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAMON ALGERNON SIMS,<br><br>    Defendant and Appellant. | E062472<br><br>(Super.Ct.Nos. FVI1401998 & FWV1200924)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

**STATEMENT OF THE CASE**

A.    <u>CASE NO. FWV1200924 (FIRST CASE)</u>

On June 13, 2012, an information charged defendant and appellant Damon

1

Algernon Sims with attempted second degree robbery under Penal Code[1] sections 664 and 211 (count 1); and assault with a firearm under section 245, subdivision (a)(2) (count 2). The information also alleged that as to both counts, defendant personally used a firearm, a handgun under section 12022.53, subdivision (b), causing the offenses to be serious and violent crimes under sections 1192.7, subdivision (c)(8), and 667.5, subdivision (c)(8); and as to count 2, defendant personally used a firearm under section 12022.5, subdivisions (a) and (d). The information further alleged that defendant was eligible for state prison under section 1170, subdivision (h)(3).

On October 12, 2012, after defense counsel declared doubt regarding defendant's present mental competence, the trial court suspended criminal proceedings and appointed a medical expert to evaluate defendant's competence to stand trial. On January 4, 2013, after receiving a medical report, the court found defendant mentally competent to stand trial.

On January 29, 2013, at a change of plea hearing, the trial court found that defendant read and understood his declaration, plea form, the nature of the charges, penalties, punishment to which he was pleading, and each of his constitutional rights. The court then found that defendant knowingly, intelligently, freely, and voluntarily waived his rights.

On the prosecutor's motion and with the approval of defense counsel, the court amended the information by interlineations to allege counts 3 and 4: grand theft from

---

[1] All statutory references are to the Penal Code unless otherwise specified.

person under section 487, subdivision (c) (count 3), and trespass with great bodily injury under section 601, subdivision (a) (count 4).

Thereafter, defendant pled no contest to count 2 (assault with a firearm, a strike), count 3 (grand theft from person) and count 4 (trespass with threat of great bodily injury), under *People v. West* (1970) 3 Cal.3d 595, against the advice of his counsel. Counsel stated, "I'm not joining in his plea, your Honor, for reasons that we have discussed, your Honor." Thereafter, the court asked the parties to stipulate "that the preliminary hearing transcript provides a factual basis for the plea." The prosecutor stipulated but defense counsel stated, "It's a *People versus West*, your Honor." The court replied, "yes," and stated:

"Thank you. All right. The Court further finds then that the defendant has personally and orally entered his plea in open court. The plea was entered freely, voluntarily, knowingly and intelligently and there is a factual basis for the plea, which the Court will accept and confirm."

According to the plea agreement, defendant agreed to a total sentence of five years four months, suspended; 365 days of custody; minimum fines; actual restitution as to all counts; and a dismissal of all other counts and allegations. The court stated that the remaining counts were to be dismissed at the time of sentencing.

On February 28, 2013, the court indicated that it had read and considered the probation officer's report. Defense counsel requested that the court strike term Nos. 12, 13, and 14 of the probation report as defendant had told the probation officer he had used medical marijuana for an injury a year prior to his incarceration. The court declined to

strike term Nos. 12 and 14,[2] but struck term No. 13, which provided: "Neither use nor possess any controlled substance without medical prescription and a physician's written notice is given to the probation officer." The court also struck term No. 23, which required enrolling in a drug treatment program.

On the prosecution's motion, the court ordered count 1 dismissed per section 1385, as well as the allegations, pursuant to the plea agreement. The court then chose count 2 as the principal term and sentenced defendant to the upper term of four years, plus a consecutive eight months (1/3 the midterm of two years) on count 3, plus a consecutive eight months (1/3 the midterm of two years) on count 4, for a total prison term of five years four months, with execution of the sentence suspended. The court granted defendant supervised probation for 36 months, with numerous terms and conditions, including that defendant violate no law. Defendant accepted probation and the court gave him a copy of the terms and conditions.

On June 3, 2014, the probation officer executed a petition for revocation of probation and remand, later filed on August 21, 2014, stating that defendant had failed to comply with a number of terms and conditions of probation, including failing to report to probation as directed, failing to participate in programs, and violating the law. The report stated: "The defendant has been arrested for a drug offense after the probation officer has

_____

[2] Term No. 12 provided: "Submit to a search and seizure of your person, residence and/or property under your control at any time of the day or night by any law-enforcement officer, with or without a search warrant, and with our without cause (*People v. Bravo*)." Term No. 14 provided: "Submit to a controlled substance test at direction of probation officer. Each test is subject to a[n] $11.00 fee, to be collected by Central Collections."

4

referred the defendant to services to help the defendant deal with his drug habit. Because the disposition of the new law offense is yet to be determined, it is respectfully recommended that the matter trail the new offense."

B.     CASE NO. FVI1401998 (SECOND CASE)

On July 3, 2014, an information charged defendant with possession of a controlled substance, methamphetamine, under Health and Safety Code section 11377, subdivision (a) (counts 1, 2); and possession of injection/ingestion device under Health and Safety Code section 11364, subdivision (a), a misdemeanor (count 3). The information further alleged that defendant had suffered a strike prior, assault with a firearm under section 245, subdivision (a)(2), in the first case (§§ 1170.12, subds. (a)-(d), and 667, subds. (b)-(i).) On July 10, 2014, defendant pled not guilty.

On August 21, 2014, the petition for revocation of probation in the first case was filed. The court ordered probation revoked for the purposes of retaining jurisdiction.

At the August 22, 2014, hearing, defendant denied the allegations for revocation of probation. The *Vickers*[3] hearing was reserved and the case was set to trail the second case. Probation remained revoked.

On September 2, 2014, both cases were transferred from Victorville to Rancho Cucamonga.

---

[3] *People v. Vickers* (1972) 8 Cal.3d 451.

5

On September 3, 2014, over defense counsel's objection, the trial court stated that it would hear the probation violation concurrently with the trial on the second case. The court granted the motion to bifurcate the prior.

On September 4, 2014, trial began. On September 9, 2014, the jury found defendant guilty on counts 1 and 3, and not guilty as to count 2. Defendant waived a jury trial on the prior strike, and the court found the prior strike true. The action then proceeded for violation of probation. The court found defendant in violation of probation solely based on term No. 2—violate no law. Probation remained revoked. The court set sentencing for November 24, 2013. The court referred the case to the probation office for a supplemental report.

On November 24, 2014, in the second case, the court found that defendant satisfied the criteria under section 1170.18 (Proposition 47, which went into effect on November 5, 2014), and the court reduced the felony conviction for possession of methamphetamine in count 1 to a misdemeanor. The court sentenced defendant to serve 358 days in county jail, with credit for 358 days served. This was a terminal disposition.

On that same date, as to the first case, the court stated the probation remained revoked. The court then denied probation and imposed the previously imposed, but suspended, sentence of five years four months.

In the second case, defendant filed a timely notice of appeal on December 8, 2014. On December 10, 2014, defense counsel filed a notice of appeal in the same case as the court had reduced the felony to a misdemeanor under section 1170.18.

On December 10, 2014, in the first case, defense counsel filed an appeal from the imposition of the suspended sentence. On December 18, 2014, Appellate Defenders, Inc. filed an amended notice of appeal after a jury trial in the second case and a contested probation violation in the first case.

## FACTUAL AND PROCEDURAL HISTORY

A. CASE NO. FWV1200924 (FIRST CASE)[4]

On January 31, 2012, around 8:10 a.m., Jane Doe had dropped her daughter off at school, and returned to the parking lot of her apartment complex in Upland. While she sat in her car for about a minute, she saw two Black males walk by. One walked up the street and the other taller male, wearing a leather coat, walked into the front gate of the apartment complex. During the preliminary hearing, Doe identified defendant as the taller male.

Something did not seem right to Doe, so she walked down the alleyway through the side of the complex and then up the stairs to her apartment. As she began to put her key in the door, both males ran up the stairs. Defendant, who was holding a black gun with a rag over it, told Doe to open the door, shut up, and not to scream. Doe pleaded, "[P]lease don't do this. I have a daughter." Defendant told her to shut up.

As Doe cried and prayed, defendant continued to tell her to shut up. As she crouched down to a fetal position, she heard the gun fall next to her; she noticed there

_____

[4] Defendant pled no contest in this case. As the court found the preliminary hearing contained the factual basis of the plea, the facts are taken from the preliminary hearing.

7

was no cylinder in the gun. Defendant picked up the gun and Doe struggled with him over it. As she screamed, defendant twice hit her in the face. The other male remained by the steps. Defendant snatched the keys from her hand and tried to grab Doe's phone; she did not let go. After two seconds of quiet, the two males ran down the stairs. Doe screamed again.

Doe called the police. When they arrived, she gave her statement. Doe told the police one of the males was very tall and she demonstrated how tall with her hands and arms. An officer estimated the height at 6 feet 3 inches tall. She told the officer the taller man had braids, wore a leather coat and jeans, looked grungy, and smelled like car oil. Doe suffered a gash on her hand that resulted in a scar and a lump on her head.

On February 2, 2012, Upland Police Detective Dodt showed Doe a six-pack photo lineup. She identified defendant's picture in position No. 5. Another witness identified defendant in position No. 5 as looking like the suspect, but said the shorter man had braids and the taller man was dressed nicely. Another potential witness was unable to recognize anyone. One of the witnesses provided the license plate number and described the vehicle as a tan Jeep Cherokee type vehicle. Detective Dodt ran the license plate; it was registered to a Jeep.

Doe later called the detective a number of times. She stated that she thought she had twice seen someone in the complex who looked like the taller male. It was not defendant.

B.     CASE NO. FVI1401998 (SECOND CASE)

1.     *COUNT 3: POSSESSION OF INJECTION/INGESTION DEVICE*

On December 6, 2013, about 2:13 a.m., San Bernardino Sheriff's Deputies Buell and Rose went to a detached two-car garage of a residence in Victorville. They knocked on the garage door and identified themselves as police officers. Deputy Buell had been to the main residence a few months prior where five or six people were living. Defendant opened the garage door, which was locked from the inside.

A couch surrounded by sheets was at the center of the garage. A female was standing outside the enclosed area. There were cabinets outside the enclosed area and canned goods were visible. When the deputies searched the garage, they found about six used syringes scattered on the floor around the couch and a latex glove near the couch. The syringes were both inside and outside the enclosed area. Contained in the latex glove were two small clear plastic baggies containing a white crystalline substance. Deputy Buell suspected the substance was methamphetamine; a field test confirmed his suspicion.

While Deputy Buell was searching the garage, he conversed with defendant. Defendant stated that he had lived there for numerous months and had paid rent to the occupants of the main residence. He was the sole occupant of the garage. After the deputy found the baggies, defendant said that he had recently returned after living in a river bed nearby and that an unknown male had been residing in the garage. This person may have left belongings behind. Neither defendant nor the female appeared to be under the influence of drugs.

9

The suspected methamphetamine was submitted to the lab for testing. Its net weight was 0.12 grams, and the substance was found to contain methamphetamine.

2. *COUNT 1: POSSESSION OF METHAMPHETAMINE*

On May 29, 2014, while San Bernardino County Sheriff's Deputies Irwin and Abernathy were on patrol, they contacted defendant. Deputy Abernathy asked defendant if he had anything illegal on him. Defendant responded that he did not. Deputy Abernathy conducted a pedestrian check and searched defendant. In the small coin pocket of defendant's pants, the deputy found a white piece of melted plastic sealed around a white crystalline substance, which he suspected to be methamphetamine. In another pocket, he found several new syringes in a bag. The deputy conducted a field test on the substance which tested positive for amphetamines. Deputy Abernathy photographed the pieces of plastic. He then arrested defendant and booked him into custody for simple possession of a controlled substance.

Lab tests later confirmed the net weight of the substance was 0.18 grams; it contained methamphetamine.

**DISCUSSION**

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so.  Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no error.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
_____
J.

We concur:


McKINSTER_____
        Acting P. J.


KING_____
          J.