75 Cal.Rptr.3d 190 (2008)
161 Cal.App.4th 1405
In re Nicomedes VIRAY on Habeas Corpus.
No. D050934.
Court of Appeal of California, Fourth District, Division One.
April 15, 2008.
*191 Rich Pfeiffer, under appointment by the Court of Appeal for Appellant.
Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L Garland, Senior Assistant Attorney General, Heather Bushman and Linnea D. Piazza, Deputy Attorneys General for Respondent.
McINTYRE, J.
Nicomedes Viray challenges Governor Arnold Schwarzenegger's reversal of a decision by the Board of Parole Hearings (the Board) finding him suitable for release on parole. We conclude there was no evidence to support the Governor's ultimate conclusion that Viray was unsuitable *192 for parole because he currently posed an unreasonable risk to public safety and therefore grant the requested relief.

I. FACTS

A. The Offense, Trial and Appeal
The facts of Viray's offense, as derived from the Governor's reversal of the Board's decision, are as follows:
On the night of February 14, 1982, 27-year-old Viray went to a nightclub with several of his friends carrying a large knife in his waistband. While on the dance floor, Victor Gonzales Cacha bumped into Viray several times and kicked him. Viray felt intimidated, drew his knife and stabbed Cacha once or twice in the chest. Viray continued to stab Cacha after the men fell to the floor. Someone took the knife away from Viray, but one of Viray's friends grabbed the knife and fled the nightclub with Viray. Cacha suffered stab wounds to each arm, left thigh, heart and lung and died from his injuries.
Police arrested Viray the following day and discovered that he had no prior criminal record. A jury convicted Viray of second-degree murder with the use of a knife and the trial court later sentenced him to 15 years to life in prison for the murder, plus one year for the knife enhancement. We affirmed the judgment on appeal.

B. Viray's Performance in Prison
During his approximately 24 years in prison, Viray was disciplined once in 1983 for possessing marijuana and counseled four times for minor misconduct. Viray received his GED in 1985 and has taken biblical and learning improvement courses. He completed vocational training in air conditioning and refrigeration, sheet metal and data processing and held institutional jobs as a janitor, tool room attendant, wood machinist, porter and sole layer. Viray has taken part in extracurricular activities and participated in therapy and self-help activities, including, Alcoholics Anonymous, Anger Management, Communication Skills Training, Anger Control Group, The Way to Happiness, Reality and Decision-Making, and Self-Esteem and Assertiveness. He also received favorable reports from various correctional and mental-health professionals over the years and has maintained supportive relationships with family and others.
If released from prison, Viray is subject to deportation to the Philippines where he has family with whom he can live and employment offers. If not deported, Viray plans to live with is sister and brother-in-law in San Diego County.

C. The Present Proceedings
The present parole hearing was conducted in 2006. The Board noted that Viray had been drinking too much and had been provoked by the victim. It concluded that Viray was suitable for parole and would not pose an unreasonable risk to society if released from prison. The Governor reversed the Board's parole grant, noting that the offense "was especially aggravated because of the extremely violent nature of the attack, which involved multiple stab wounds, and because the motive was materially less significant than those which conventionally drive people to commit such a murder." The Governor also concluded that Viray's behavior of leaving the nightclub after the assault and going to other nightclubs "exhibit[ed] a callous disregard" for Cacha's suffering. He noted that the San Diego County District Attorney's Office opposed Viray's release based, in part, on the gravity of the offense and found that the gravity of the murder was alone sufficient to conclude that releasing Viray from prison would pose an unreasonable public safety risk.
*193 Viray petitioned the San Diego County Superior Court for a writ of habeas corpus alleging that the Governor's finding that the gravity of the murder alone was sufficient to conclude that his release would cause an unreasonable risk to society was not supported by some evidence and contrary to the rehabilitative goals espoused by the prison system. The court denied the writ, concluding that the Governor's decision was supported by some evidence. Viray filed a writ petition in this court and we issued an order to show cause why the relief requested should not be granted.

II. DISCUSSION

A. The Statutory Framework and Judicial Review
The purpose of parole is to "help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." (Morrissey v. Brewer (1972) 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484.) Although parolees are no longer in physical custody, they remain under the legal custody of the Department of Corrections and Rehabilitation and can be returned to prison at any time. (Pen.Code, § 3056; People v. Denne (1956) 141 Cal.App.2d 499, 508, 297 P.2d 451 [parolees are permitted to serve the remainder of their term outside rather than within prison walls].) Parolees are also subject to conditions that govern their residence, associates, ability to travel, use of intoxicants and other aspects of their lives. (Cal.Code Regs., tit. 15, §§ 2512-2513.)
The granting of parole is an essential part of our criminal justice system and is intended to assist those convicted of crime to integrate into society as constructive individuals as soon as possible and alleviate the cost of maintaining them in custodial facilities. (Morrissey v. Brewer, supra, 408 U.S. at p. 477, 92 S.Ct. 2593; People v. Vickers (1972) 8 Cal.3d 451, 455, 458, 105 Cal.Rptr. 305, 503 P.2d 1313.) Release on parole is said to be the rule, rather than the exception (In re Smith (2003) 114 Cal.App.4th 343, 351, 7 Cal. Rptr.3d 655, citing Pen.Code, § 3041 subd. (a)) and the Board is required to set a release date unless it determines that "the gravity of the current convicted offense ... is such that consideration of the public safety requires a more lengthy period of incarceration...." (Pen.Code, § 3041 subd. (b).)
In determining whether an inmate is suitable for parole, the Board and the Governor must consider certain factors tending to show suitability and unsuitability for parole. (Cal. Const., art. V, § 8(b); Pen.Code, § 3041.2.) The specified factors are "general guidelines" (Cal.Code Regs., tit. 15, § 2402, subds. (c), (d)) and the Board is expected to consider "[a]ll relevant, reliable information available" because circumstances taken alone, while not establishing unsuitability for parole, may contribute to a pattern which results in a finding of unsuitability. (Id. at subd. (b).)
Circumstances tending to show suitability for parole include that the inmate: (1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in his life, especially if the stress had built over a long period of time; (5) committed the criminal offense as a result of battered woman syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that suggest an enhanced *194 ability to function within the law upon release. (Cal.Code Regs., tit. 15, § 2402, subd. (d).)
A prisoner may be considered unsuitable for parole based on six nonexclusive factors, including: (1) the nature of the commitment offense; (2) a previous record of violence; (3) an unstable social history; (4) a record of sadistic sexual offenses; (5) psychological factors; and (6) serious prison misconduct. (Cal.Code Regs., tit. 15, § 2402, subd. (c).) The only factor at issue in this case is the nature of Viray's offense, specifically, whether it was committed in an "especially heinous, atrocious or cruel manner." (Id. at subd. (c)(1).) Some aspects of the crime to consider in deciding this particular factor include whether: (1) there were multiple victims; (2) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (3) he abused, defiled or mutilated the victim during or after the offense; (4) he carried out the offense in a manner demonstrating an exceptionally callous disregard for human suffering; and (5) the motive for the crime was inexplicable or very trivial in relation to the offense. (Ibid.)
The Governor has the authority to review the Board's decision to parole an inmate convicted of murder. (Cal. Const., art. V, § 8(b); Pen.Code, § 3041.2.) The Governor's decision to reverse a grant of parole by the Board is governed by the same factors that guide the Board's decision (Cal. Const., art. V, § 8(b)), and is based on "materials provided by the parole authority." (Pen.Code, § 3041.2, subd. (a).) The judicial branch is authorized to review the factual basis of the Governor's decision. (In re Rosenkrantz (2002) 29 Cal.4th 616, 667, 128 Cal.Rptr.2d 104, 59 P.3d 174 (Rosenkrantz).) Although due process requires that the Governor's decision be supported by "some evidence" in the record, only a modicum of evidence is required and the Governor has the authority to resolve any conflicts in the evidence and to decide the weight to be given the evidence. (Id. at p. 677, 128 Cal.Rptr.2d 104, 59 P.3d 174.)
"[T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the Governor, but the decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious. It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the Governor's decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the Governor's decision." (Rosenkrantz, supra, 29 Cal.4th at p. 677, 128 Cal.Rptr.2d 104, 59 P.3d 174.)
Although the nature of the prisoner's offense, standing alone, may be a sufficient basis to deny parole, "[i]n some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violationfor example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (Rosenkrantz, supra, 29 Cal.4th at p. 683, 128 Cal.Rptr.2d 104, 59 P.3d 174, italics added.) Accordingly, a life term offense must be "`particularly egregious to justify the denial of a parole date.' [Citation.]" (Ibid.)
In In re Dannenberg (2005) 34 Cal.4th 1061, 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Dannenberg), our high court *195 explained that its "use of the phrase `particularly egregious,' conveyed only that the violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined. [Citation.]" (Id. at p. 1095, 23 Cal.Rptr.3d 417, 104 P.3d 783, italics omitted.) The Dannenberg court also emphasized that "the determination of suitability for parole involves a paramount assessment of the public safety risk posed by the particular offender, without regard to a comparative analysis of similar offenses committed by other persons." (Id. at p. 1084, 23 Cal.Rptr.3d 417, 104 P.3d 783.) Stated differently, "the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, [but] it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." (Id. at p. 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783.) In the case before it, the Dannenberg court concluded that the Board had proceeded lawfully when it found the inmate unsuitable for release because it had pointed to some evidence that the particular circumstances of the crime, circumstances beyond the minimum elements of the conviction, indicated exceptional callousness and cruelty with trivial provocation and suggested the inmate remained a danger to public safety. (Id. at p. 1098, 23 Cal. Rptr.3d 417,104 P.3d 783.)
A number of appellate courts have discussed the standard for reviewing the Governor's reversal of a Board decision and our high court is considering the question of the extent that the Board and the Governor should consider an inmate's current dangerousness in making a parole suitability determination, and at what point, if ever, the gravity of the commitment offense and prior criminality are insufficient to deny parole when an inmate otherwise appears rehabilitated. (See In re Lawrence (2007) 150 Cal.App.4th 1511, 59 Cal. Rptr.3d 537, review granted Sept. 19, 2007, S154018 (Lawrence); In re Shaputis 2007 WL 2372405, review granted Oct. 24, 2007, S155872 (Shaputis); In re Cooper (2007) 153 Cal.App.4th 1043, 62 Cal.Rptr.3d 907, review granted Oct. 24, 2007, S155130 (Cooper); In re Jacobson (2007) 154 Cal. App.4th 849, 65 Cal.Rptr.3d 222 review granted Dec. 12, 2007, S156416 (Jacobson); In re Dannenberg (2007) 156 Cal. App.4th 1387, 68 Cal.Rptr.3d 188, review granted Feb. 13, 2008, S158880; In re Montgomery (2007) 156 Cal.App.4th 930, 67 Cal.Rptr.3d 721, review granted Feb. 20, 2008, S159141 (Montgomery); In re Staben 2007 WL 3257191, review granted Feb. 27, 2008, S159042.) (Petitioner's request for judicial notice of the grant of review in Jacobson is granted.)
Some appellate courts have held that "[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety.... [In other words,] [s]ome evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." (In re Lee (2006) 143 Cal.App.4th 1400, 1408-1409, 49 Cal.Rptr.3d 931, fns. omitted, italics omitted (Lee); followed by Lawrence, supra, 150 Cal.App.4th at p. 1544, 59 Cal.Rptr.3d 537; Shaputis, supra, at *6; Cooper, supra, 153 Cal.App.4th at p. 1060, 62 Cal.Rptr.3d 907; Montgomery, supra, 156 Cal.App.4th at p. 947, 67 Cal. Rptr.3d 721; Dannenberg, supra, 156 Cal. App.4th at p. 1398, 68 Cal.Rptr.3d 188.) Other courts or dissenting justices have rejected this standard, concluding that a parole unsuitability decision must be upheld if the offense was particularly heinous in that the violence or viciousness of the *196 crime was more than minimally necessary to convict the inmate of the offense without regard to whether there is a connection between this finding and the conclusion that the inmate currently poses an unreasonable risk of danger to society if released. (See e.g., Jacobson, supra, 154 Cal.App.4th at pp. 853, 860-861, 65 Cal. Rptr.3d 222.)
Until our high court resolves this uncertainty, we believe the appropriate inquiry is not whether there is some evidence to support the individual suitability or unsuitability factors, but whether there is some evidence supporting the ultimate decision that the prisoner will pose an unreasonable risk of danger to society if released from prison. (See Rosenkrantz, supra, 29 Cal.4th at p. 664, 128 Cal.Rptr.2d 104, 59 P.3d 174 [the Governor's decision is subject to judicial review to ensure due process compliance]; Cal.Code Regs., tit. 15, § 2402, subd. (a) [an unsuitability decision is a conclusion that "the prisoner will pose an unreasonable risk of danger to society if released from prison"].) We agree that it is appropriate to consider the nature of the crime as this has a bearing on whether the individual is likely to reoffend and thereby pose a risk to society if released. However, it is not helpful for courts to simply review the crime to ascertain whether the facts were more than minimally necessary to convict the inmate of the offense as the facts are subject to differing interpretations and it diverts attention from whether the crime was more than a typical second degree murder. Accordingly, we independently review the record Rosenkrantz, supra, 29 Cal.4th at p. 677, 128 Cal.Rptr.2d 104, 59 P.3d 174) to determine whether some evidence supported the Governor's decision that Viray's release currently posed an unreasonable risk of danger to the public. (We note that in In re Singler (2008) 161 Cal.App.4th 281, 73 Cal.Rptr.3d 864 which is not yet final, the Third Appellate District somewhat similarly interpreted the current standard as requiring a showing that the crime was so heinous, atrocious or cruel so as to undermine the inmate's rehabilitative efforts demonstrating that he is no longer a danger to society if released on parole.)

B. Analysis

1. The Governor Relied Solely Upon the Commitment Offense
Although the Governor's reversal does not list all the suitability factors, we assume he considered each factor as the record contains evidence showing the existence of all applicable suitability factors. (Cal.Code Regs., tit. 15, § 2402, subd. (d).)
The Governor stated, that "[t]he gravity of the second-degree murder perpetrated by Mr. Viray is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk." Despite this statement, the Attorney General argues that the Governor did not rely on the commitment offense alone because he also cited to the sufficiency of Viray's parole plans and the district attorney's opposition to parole. We reject this assertion.
As to the sufficiency of Viray's parole plans, the Governor acknowledged that, if deported to the Philippines, Viray planned to live with family and had employment offers there. He also noted Viray's alternate plans to live with his sister and brother-in-law in San Diego County, but stated "[w]hile Mr. Viray does have marketable skills that can be put to use outside of prison, he currently has no employment prospects in California. Having a legitimate way to provide financial support for himself immediately upon release is critical to Mr. Viray's success on parole."
*197 Based on this statement, the Attorney General claims that the Governor relied on Viray's lack of employment plans in San Diego County to reverse the Board's parole grant and that the Governor may properly look beyond marketable skills to whether the inmate has any employment prospects in his last legal residence. The Attorney General claims that Viray only had employment plans in the Philippines and none in San Diego County, his last county of residence. The record does not support this contention.
As a threshold matter, Viray is subject to an "INS hold" and is "conclusively presumed" to be deportable based on his status as a murderer. (8 U.S.C. §§ 1101(a)(43)(A) [murderers classified as aggravated felons for immigration purposes], 1228(c) [aggravated felons are conclusively presumed to be deportable].) Even assuming, however, that Viray is not deported, he need not have "fail-safe parole plans in two different countries." (In re Andrade (2006) 141 Cal.App.4th 807, 817, 46 Cal.Rptr.3d 317.) The regulations require that an inmate have realistic plans for the future or, alternatively, that the inmate developed marketable skills that can be put to use upon release. (Cal.Code Regs., tit. 15, § 2402, subd. (d)(8).)
Here, the Governor accurately acknowledged that Viray not only had marketable job skills, but also employment plans in the Philippines and San Diego County. Accordingly, we reject the Attorney General's suggestion that the Governor found Viray unsuitable for parole on the ground he lacked realistic plans or marketable skills. Inexplicably, the Governor found that Viray had "no employment prospects in California." The regulation does not require an inmate to satisfy such a higher standard and, in any event, the finding is not supported by some evidence.
At the parole hearing, the Presiding Commissioner cited to a prisoner evaluation dated about six months earlier wherein the evaluator noted that Viray needed to be more aggressive in his job search. Viray responded to this earlier criticism by indicating he believed it would be easy to obtain a job as a sheet metal worker because he had about 5,000 hours in this' vocation, that sheet metal workers must be part of a union to obtain employment and he had written to a particular individual about obtaining an apprenticeship in San Diego. Although he received a reply and a union application form, there was nothing more he could do even if he became a union member as he could not accept any employment while still incarcerated. This evidence reveals that Viray was a "prospective" or likely candidate for a job as a sheet metal worker in San Diego upon his release from jail. (Random House Unabridged Dictionary (2d ed.1993) p. 1553 [prospective means "potential, likely, or expected"].) Should Viray's job prospects in California remain a concern, any uncertainty can be addressed by conditioning his release to INS custody. (In re Andrade, supra, 141 Cal.App.4th at p. 818, 46 Cal. Rptr.3d 317.)
The Attorney General next argues that the Governor properly considered the district attorney's opposition to parole. We agree that the Governor is required to consider this evidence (Pen.Code, §§ 3042, subd. (a), 3046, subd. (c)); however, voiced opposition to parole is not an enumerated unsuitability factor (Cal.Code Regs., tit. 15, § 2402, subd. (c)) and such argument is not evidence of unsuitability. (People v. Breaux (1991) 1 Cal.4th 281, 313, 3 Cal. Rptr.2d 81, 821 P.2d 585 ["it is axiomatic that argument is not evidence"].)
The Governor's written decision reversing the grant of parole shows that he relied solely upon the commitment offense *198 to find Viray unsuitable for parole. Specifically, the Governor noted that: (1) Viray "exhibited] a callous disregard" for Cacha's suffering because he left the scene of the crime' and visited other nightclubs; (2) the crime was "especially aggravated" because of the "extremely violent" nature of the attack; and (3) the motive was "materially less significant than those which conventionally drive people to commit such a murder." Accordingly, we must determine whether these three reasons, all based on the nature of the commitment offense, support the Governor's unsuitability determination.

2. Exceptionally Callous Disregard for Human Suffering
There is no evidence that Viray committed the crime in a manner that demonstrated an exceptionally callous disregard for human suffering. The initial stabbing to Cacha's chest was quick, followed by a scuffle while Cacha was on the ground whereby he suffered additional stabbings. Nothing about the crime demonstrated an exceptionally callous disregard for human suffering, such as taunting or torturing the victim. The fact Viray left the scene of the crime does not show that the crime itself was done in an exceptionally callous manner.
While the attack was unquestionably violent, as are most murders, there is no evidence suggesting that the crime was more violent than minimally required to sustain a second degree murder conviction. As other courts have noted, "`[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought' " and all second degree murders involve some amount of viciousness or callousness to satisfy the malice requirement. (In re Weider (2006) 145 Cal.App.4th 570, 587, 52 Cal.Rptr.3d 147.) Although the Governor suggests that the crime was especially aggravated because it involved multiple stab wounds, there is no evidence showing that the first wound Viray inflicted was sufficient to kill the victim. Stated differently, without multiple stab wounds there may have been no murder. Accordingly, there is no evidence showing this particular second degree murder was especially aggravated.

3. Trivial Motive for the Crime
We find some evidence in the record to support the Governor's final conclusion that Viray's motive for the crime was trivial in relation to the offense. Viray stabbed Cacha on a dance floor after Cacha looked at him in a threatening manner, bumped into him several times and kicked him. Even giving credit to Viray's claims that Cacha scared him, there are numerous things Viray could have done to alleviate his fear short of murder. Given the circumstances of the crime, the Governor could rationally conclude that Viray's only motive for his actions was trivial in relation to the offense.
Nonetheless, we find no evidence in the record to support the Governor's ultimate conclusion that Viray's release would unreasonably endanger public safety. But for the immutable nature of the crime, all the applicable regulatory criteria indicate that Viray is suitable for parole. (Cal. Code Regs., tit. 15, § 2402, subd. (d).) Viray has no mental health issues and has remained discipline free in prison for 20 years. Various psychological and psychiatric evaluators unanimously concluded that Viray was a very good candidate for parole and would unlikely reoffend if released. The latest psychological evaluator concurred in this assessment, found that Viray presented a low potential for violence if released and noted that Viray had "matured significantly and markedly over the years and would very likely be able to *199 deal with stressful or fearful situations more thoughtfully and less impulsively."
Viray committed a violent and impulsiye act while intoxicated and has had over 24 years in prison to reflect on his actions. He has made commendable rehabilitative gains and is ready to be reintegrated into society and serve the remainder of his sentence outside prison walls. (Morrissey v. Brewer, supra, 408 u.S. at p. 477, 92 S.Ct. 2593; People v. Vickers, supra, 8 Cal.3d at p. 458, 105 Cal.Rptr. 305, 503 P.2d 1313.) Because we find no support in the record suggesting Viray would pose a threat to public safety if released, it serves no purpose to remand this matter to the Governor to permit him to reconsider his decision. (In re Scott (2005) 133 Cal. App.4th 573, 603-604, 34 Cal.Rptr.3d 905.)

DISPOSITION
The Governor's decision to reverse the Board's order granting parole to Viray is vacated, and the Board's parole release order is reinstated.
I concur: McDonald, J.
HALLER, Acting P.J., concuring in the result.
I agree with the majority's conclusion that the Governor relied solely on the circumstances of the crime in denying parole. I also agree that the Governor's finding that the second degree murder was "especially aggravated" is not supported by a modicum of evidence. I write separately because I believe the majority has departed from the Supreme Court's directives in In re Rosenkrantz (2002) 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174 and In re Dannenberg (2005) 34 Cal.4th 1061, 23 Cal. Rptr.3d 417,104 P.3d 783.
In deciding whether to grant or deny parole, the primary consideration to be made is whether "the prisoner will pose an unreasonable risk of danger to society if released from prison." (Cal.Code Regs., tit. 15, § 2402, subd. (a); see Pen.Code, § 3041, subd. (b).) A governor is entitled to base that decision solely on the circumstances of the crime. (In re Rosenkrantz, supra, 29 Cal.4th at pp. 682-683, 128 Cal. Rptr.2d 104, 59 P.3d 174.) In evaluating the crime, the Governor is not bound by the evidence credited by the fact finder at trial and may independently evaluate the evidence to determine whether, in his judgment, the circumstances of the crime dictate denial of parole. (Id, at p. 679, 128 Cal.Rptr.2d 104, 59 P.3d 174.)
When the Governor's decision is based solely on the circumstances of the crime, the offense must be "particularly egregious." (In re Rosenkrantz, supra, 29 Cal.4th at p. 683, 128 Cal.Rptr.2d 104, 59 P.3d 174.) In defining this phrase the Supreme Court has required that the "violence or viciousness of the inmate's crime must be more than minimally necessary to convict him of the offense for which he is confined." (In re Dannenberg, supra, 34 Cal.4th at p. 1095, 23 Cal.Rptr.3d 417, 104 P.3d 783, italics omitted.) It has also observed that "[i]n some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violationfor example where no circumstances of: the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (In re Rosenkrantz, supra, 29 Cal.4th at p. 683, 128 Cal.Rptr.2d 104, 59 P.3d 174.)
Judicial review of the Governor's decision is "extremely deferential" and is limited to ascertaining whether "some evidence," also referred to as a "modicum of evidence," supports the Governor's conclusion. When the denial is based on the circumstances of the commitment offense, *200 there must be some evidence supporting the Governor's conclusion that the crime was "particularly egregious." (In re Rosenkrantz, supra, 29 Cal.4th at pp. 677, 679, 683, 128 Cal.Rptr.2d 104, 59 P.3d 174.)
In my view, the majority opinion departs from this standard. In its place it favors a standard set forth in some recent appellate court opinions which maintain that the "test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety." (Maj. opn., p. 195.) Specifically, the majority asserts at page 196 that "the appropriate inquiry is not whether there is some evidence to support the individual suitability or unsuitability factors, but whether there is some evidence supporting the ultimate decision that the prisoner will pose an unreasonable risk of danger to society if released from prison."
As commendable as this test may be, it conflicts, in my opinion, with the Supreme Court's standard. First, it takes issue with the manner in which the Supreme Court has defined "especially egregious" crimes. Second, it rejects the Supreme Court's definition that such crimes are a reliable predictor of whether a prisoner will pose an unreasonable risk of danger to society and its holding that the Governor can deny parole relying solely on the circumstances of the crime so long as there is "some evidence" supporting the finding of egregiousness. Until the Supreme Court holds otherwise, I will adhere to the directives and definitions set forth in Rosenkrantz and Dannenberg.
Applying that standard, I agree with the majority assessment that because there was no evidence suggesting that the crime was more violent than minimally required to sustain a second degree murder conviction, the Governor's conclusion that the crime was "especially aggravated" cannot be sustained. Moreover, because his denial of parole was based solely on the circumstances of the crime, that conclusion cannot stand.