Filed 4/30/13  P. v. Sharrieff CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E052552 |
| v. | (Super.Ct.No. FMB1000315) |
| NAIM ANWAR SHARRIEFF, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Rodney A. Cortez, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Peter Quon, Jr. and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Naim Anwar Sharrieff pled guilty to offering to sell a controlled substance (Health & Saf. Code, § 11379, subd. (a)) in exchange for being placed on

1

drug court probation. Subsequently, probation was revoked and defendant was sentenced to the upper term of four years in prison. Defendant contends the manner in which his probation was revoked violated his right to due process. We affirm.

## BACKGROUND

On August 16, 2010, defendant entered his guilty plea; his plea was contingent on being accepted into the drug court program.

Although not originally included, we augmented the record to include drug court materials the trial court had kept confidential. This included status reports prepared for review hearings as well as defendant's application forms. Among these was a "DRUG COURT APPLICATION AND AGREEMENT" (Agreement), which defendant initialed and signed on the same date he pleaded guilty. In the Agreement defendant waived "the requirement for Probation to file a formal Petition to Revoke probation, and a right to a Probation Violation hearing (Vicker's Hearing) on any violations that may occur while I am on Drug Court Probation." He also agreed "that I will submit to a search of my person, place of residence, and/or any other property under my control, without the necessity of a search warrant, at any time of the day or night, without reasonable cause by any law enforcement officer, probation officer, or any member of the Drug Court Treatment Team."

Defendant was granted probation on September 28, 2010, probation condition 21 being his participation in the drug court rehabilitation program. Defendant's performance was marred from the beginning, with several notations in the minutes of the next two months that defendant was "not in compliance." The minutes for the "drug

2

court review" on November 12, 2010, report that "Defendant was also ordered to complete 10 additional meetings (along with required meetings) by next court date," which was set for December 7, 2010.

However, on November 23, 2010, a sheriff's deputy (the trial court's bailiff) attempted to "contact" defendant, but defendant "fled the contact by law enforcement." Defendant and his "partner fled at rates of exceeding 80 miles per hour on dirt roads." At a "Drug Court review" a week later, probation was revoked and a bench warrant was issued based on an "alleged violation of probation."

Defendant was present in custody with a deputy public defender at a "Drug Court review" on December 3, 2010, and the bench warrant was discharged; defendant was ordered to appear on December 7, 2010, the date of the originally scheduled hearing, and remained in custody. No reporter was present at this hearing, so nothing is on record about any discussion of defendant's "alleged violation of probation" or the attempted law enforcement contact of November 23, 2010. Defendant signed an "advisement of legal rights" form, which had nothing to do with his "alleged violation of probation" but notified him of his basic trial rights as if he were to be charged and arraigned on a new offense.

On December 7, 2010, defendant was present in custody with both his deputy public defender and the deputy district attorney for another "Drug Court review"; nevertheless, on the court's own motion, the hearing was continued two weeks to December 21, 2010, with defendant to remain in custody.

3

On December 21, 2010, the trial court held another "Drug Court review," with defendant in custody and defense and prosecution counsel present. The trial court began, "I have determined based upon the information provided by the deputies that went on the - - [¶] What was the date? Where is Clinton? What was the date you all went out?"

The bailiff responded, "23rd."

The trial court continued, "November 23rd, the day before Thanksgiving, that's right. Mr. Shar[r]ieff fled the contact by law enforcement. [¶] I don't accept, Mr. Shar[r]ieff that it wasn't you; that it was mistaken identity. In fact, your brother was just in here. Was it last week? You guys don't look anything alike, nothing alike. And the contact or attempted contact was explained to the court, as well as your attorney, as well as the district attorney by my bailiff who was the one that attempted the contact with you. And then you and your partner fled at rates of exceeding 80 miles per hour on dirt roads. That's not the type of behavior we expect from people that are in drug court. [¶] And you are terminated from drug court . . . . I do find that he is in violation and he is terminated."

The trial court proceeded to sentencing. "Waive arraignment for judgment and sentence?" Defense counsel replied, "So waived." The trial court asked, "No legal cause?" Defense counsel agreed, "No legal cause." The trial court inquired, "You wish to be heard?" Defense counsel replied, "Yes, your Honor. Mr. Shar[r]ieff still states that it was not him and that he has abided by all other terms. I would ask the Court to give consideration for at least mid term for him since he has not been convicted in any

4

other matters, including the one alleged." With that, defense counsel submitted. The People asked "the Court to sentence him to the aggravated term."

The trial court stated, "You know, Mr. Shar[r]ieff, the DA objected to you coming into this program, and this is an example as to why they had the foresight to think and believe that you wouldn't be successful in this program. It was conveyed to me that you're a drug dealer, not a user. And you have show[n] that . . . you are. You might not use, but you are a drug dealer. I gave you one shot. You didn't succeed with that shot. You can put your hands down because I'm not going to be calling upon you. So when you finish serving your time, perhaps you'll turn your life around or you'll go back to dealing drugs. I don't know. I prefer that you not go back again in drugs."

Defendant interjected, "Can I please - -."

The trial court continued, "But if that's what you choose, then I'll be here, and the DA will be here, and the attorneys will be here to represent you, and law enforcement will be out there watching as well." The trial court then imposed the aggravated term, stated the credits and fines, the reasons for the aggravated term, and, at the request of defendant's trial counsel, stated that it would refer defendant to a correctional drug treatment program.

Defendant then stated, "Can I say something?"

The trial court responded, "No. You're done."

**DISCUSSION**

Appellant contends that the trial court denied appellant's right to due process by not providing written notice of the claimed probation violations and by not holding an evidentiary hearing as to whether the violations occurred. We disagree.

Trial courts are afforded broad discretion in deciding whether to revoke probation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445.) An appellate court will not disturb the trial court's decision absent an abuse of discretion. (*People v. Self* (1991) 233 Cal.App.3d 414, 417.) As defendant contends, probationers are entitled to due process protections prior to revocation and termination of probation, including notice and an opportunity to be heard. (*People v. Vickers* (1972) 8 Cal.3d 451, 458-460 (*Vickers*).)

A probation revocation proceeding violates due process if it is fundamentally unfair. (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080.) "[S]ome flexibility in the manner in which due process guarantees are met is acceptable." (*People v. Felix* (1986) 178 Cal.App.3d 1168, 1171.) In the context of a revocation of probation, due process does not require a complete "recitation of procedural rights" and a personal waiver of those rights. (*People v. Dale* (1973) 36 Cal.App.3d 191, 194-195 (*Dale*).) Rather, a defendant can waive the formal requirements of notice and a hearing and admit a probation violation through the conduct of his attorney and his own silence. (*Ibid.*) The appellant in *Dale* complained of due process violations when the trial court revoked probation without a hearing and without obtaining a personal waiver of his right to present evidence and confront witnesses. (*Ibid.*) The appellate court concluded

6

there was an effective waiver of those rights based on "conduct of counsel in submitting an alleged violation of probation upon the probation report" and defendant's acquiescence by his silence. (*Id*. at p. 195.)

Similarly, in *People v. Baker* (1974) 38 Cal.App.3d 625, the appellant argued his right to due process was violated because he was not given prior written notice of the probation violations charged against him. (*Id*. at p. 629.) However, during the sentencing hearing, defense counsel requested and was given a brief recess to read the contents of a supplemental probation report to appellant to be certain he understood the purpose of the hearing. (*Id*. at p. 628.) The supplemental probation report charged the appellant with violating his probation by escaping probationary custody. (*Ibid*.) The hearing resumed immediately following the brief recess, and appellant was sent to prison despite his counsel's request for reinstatement of probation and a presentation of mitigating circumstances related to the probation violation. (*Id*. at pp. 628-629.) The appellate court rejected defendant's due process argument because prior notice could be implied from the record and because appellant's attorney did not object to inadequate notice of the charges during the sentencing hearing. (*Id*. at p. 629.) In this regard, the appellate court stated as follows: "Absent objection, we will not imply inadequate notice from a record which is silent as to exactly how [the appellant] was given notice of the charges." (*Ibid*.) Likewise, in *People v. Martin* (1992) 3 Cal.App.4th 482, 486, the appellate court concluded defendant waived his right to a formal probation revocation hearing "by filing a statement in mitigation which acknowledged that he

7

would be sentenced" and by failing "to object at the sentencing hearing either to the sentencing procedure or to the grounds for revocation." (*Id.* at p. 486.)

"The high court stated that the hearing must be made available 'if it is desired by the parolee.' [Citation.] There is nothing in the opinion which forecloses a summary resolution of the issue of revocation if an undisputed course of conduct constitutes, as a matter of law, a violation of one or more conditions of parole. Whether a course of conduct and the attending circumstances are factually undisputed thus leaving open only questions of law is a matter as to which the hearing officer may make inquiry. If it appears, for instance, that upon a request by the hearing officer for a preliminary statement in the nature of an offer of proof by the parties the only matter in issue is the legal consequences of an undisputed course of conduct, the hearing officer may, without hearing any witness, rule on the matter. Such summary proceedings could not be used to shift the burden or degree of proof of factual matters if they remain in issue." (*Vickers*, *supra*, 8 Cal. 3d at p. 457, fn. 6.)

The record in this case shows that defendant had actual notice of the probation violation alleged, that defendant had an opportunity to respond, and that he waived a more formal notice or hearing by his counsel's submission without objection and defendant's silence. The trial court's opening comments, including that defendant's flight from an attempted contact by law enforcement "was explained to the court, as well as your attorney", and that the court did not believe defendant's answer that it was not him but his brother, imply that defendant had both notice and an opportunity to be heard. Although not stated, the flight from an attempted law enforcement contact

8

implies that the probation condition was defendant's agreement in his drug court application to "submit to a search of my person . . . and/or any other property under my control, without the necessity of a search warrant, at any time of the day or night, without reasonable cause by any law enforcement officer . . . ." Defendant and his attorney were silent during the court's comments and pronouncement that defendant "is in violation and he is terminated" thereby acquiescing in the summary character of the court's resolution of the probation violation and waiving any right to a more formal process. The only statements or gestures by either defendant or his counsel were during the sentencing portion of the hearing. Thus, in the words of *Vickers,* the "course of conduct and the attending circumstances [we]re factually undisputed" as revealed by "a preliminary statement in the nature of an offer of proof by the parties" leaving only the question of "the legal consequences" of a "course of conduct" that was indisputable if not "undisputed." (*Vickers*, *supra*, 8 Cal. 3d at p. 457, fn. 6.) Therefore, the trial court was entitled to proceed summarily as it did, and there was no violation of defendant's rights to notice or a hearing.

This Court asked the parties to brief the issue of whether the *Vickers* waiver contained in the Agreement is valid. After reviewing the parties' well-written letter briefs, we can only conclude that the waiver is valid.

A probationer may waive his *Vickers* rights. (*In re Moss* (1985)175 Cal.App.3d 913, 930.) Here, defendant executed the Agreement, similar to a plea bargain, by which he waived his rights to a *Vickers* hearing. The Agreement was acknowledged by defendant and all relevant terms and waivers were initialed by the defendant. In return

9

for the relinquishment of the procedural rights relating to probation revocation proceedings, defendant garnered the opportunity to rehabilitate himself, and dismissal of all charges if successful. Defendant does not assert that he did not understand its terms. His argument that the agreement was an adhesion contract is contradicted by statements in the Agreement that he freely and voluntarily entered into it.

The Agreement is a negotiated contract between the prosecution and the defendant. (See *People v. Segura* (2008) 44 Cal.4th 921, 930-931 [re contract principles applicable to plea agreements].) Acceptance into the drug court program was an integral part of the plea agreement, having been specifically included as a term on the change of plea form. The Agreement constitutes a valid waiver of the procedural rights relating to probation revocation proceedings.[1] The Agreement and the plea agreement provided a valuable benefit to defendant which justified the procedural waivers.

In addition, because drug court was an integral part of the plea bargain, any challenge to the validity of the drug court agreement is tantamount to a challenge to the validity of the plea, requiring a certificate of probable cause. (See *People v. Panizzon, supra,* 13 Cal.4th at p. 79 [challenge to stipulated sentence constitutes a challenge to the guilty plea itself].) Without a certificate of probable cause, we cannot review the

---

[1] We disagree with defendant's assertion in his letter brief that he "could not have given a knowing and intelligent waiver of his right to a *Vickers* hearing because there was no way for [defendant] to assess what that waiver entailed at the time he gave it." This could be similarly said of the waiver of the right to appeal approved in *People v. Panizzon* (1996) 13 Cal.4th 68.

validity of the agreement by which defendant waived his *Vickers* rights and his conduct credit rights.

By virtue of the drug court agreement, defendant validly waived his rights under *Vickers.* There was no error, constitutional or procedural.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

HOLLENHORST_____
J.

RICHLI_____
J.

11